Vaughn Fisher, ISB No. 7624
Rebecca A. Rainey, ISB No. 7525
Christopher F. Brown, ISB No. 9328
FISHER RAINEY HUDSON
950 W. Bannock St., Ste. 630
Boise, ID 83702
Telephone: (208) 345-7000
Facsimile: (208) 514-1900
vaughn@frhtriallawyers.com
rar@frhtriallawyers.com
chris@frhtriallawyers.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHANIZ WEST, an individual,<br><br>  Plaintiff,<br><br>vs.<br><br>CITY OF CALDWELL; CITY OF CALDWELL POLICE DEPARTMENT; FORMER CHIEF CHRIS ALLGOOD in his official and individual capacity; SERGEANT DOUG WINFIELD in his official and individual capacity; LIEUTENANT ALAN SEEVERS in his official and individual capacity; OFFICER MATTHEW RICHARDSON in his official and individual capacity and DOES I-X,<br><br>  Defendants. | Case No.: 1:16-cv-359<br><br>**MEMORANDUM IN REPLY TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

COMES NOW, Shaniz West, ("Ms. West" or "Plaintiff"), by and through her counsel of record, FISHER RAINEY HUDSON, and hereby submits this Memorandum in Reply to Plaintiff's Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment

**MEMORANDUM IN REPLY TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT- 1**

## I. REPLY IN SUPPORT OF SUMMARY JUDGMENT

A reasonable person does not think "search" means "destroy." A reasonable person does not think patrol officers asking if they can "get inside and apprehend him" means having an armored SWAT team try to force him out with tear gas. A reasonable person does not think that cooperating with the police will leave her and her children homeless for 66 days.

Defendants ask this Court to find that it is constitutionally permissible to, once citizens agree to cooperate with them, then use that cooperation as a legal basis to destroy their homes. This is simply unreasonable.

Because no reasonable person believes that cooperating with the police impliedly means that the police can destroy her home and its contents, this Court can and should hold, as a matter of law, that the Defendants' intentional destruction of Ms. West's home and its contents exceeded the scope of Ms. West's consent and was, therefore, unreasonable.

**A.  Ms. West is not asking for a bright line rule; she is asking only that this Court recognize, as a matter of law, that no reasonable person impliedly consents to the intentional destruction of her home.**

Defendants' discussion of Fourth Amendment Jurisprudence (Defendants' Response Brief and Supporting Brief re: MSJ, Dkt 33-1, "Def's. Brief," pp. 4-5) ignores the critical component of searches executed pursuant to consent: if a search exceeds the scope of consent—i.e., if it intrudes upon the privacy interest of the person granting consent more than a reasonable person in that position would expect—the search is unreasonable. The case law cited by defendants bears this out. Plaintiff and Defendants are not disagreeing on the applicable law; rather, they are disagreeing on whether the facts of this case fall so far on one side of that law that summary judgment is appropriate.

It cannot be reasonably disputed that the facts of this case fall so clearly on the side of a finding that officers exceeded the scope of Ms. West's consent that, as a matter of law, Ms. West's constitutional rights were violated.

Ms. West allowed[1] the officers to search her home. She gave them the keys to do so. She did not restrict them from searching in the attic, in the closets, behind the couches, under the bed. While she may have been afraid of the threats that she would go to jail if Salinas was in the home and she did not tell them, she had nothing to hide.

But, when West agreed to allow police to "get inside and apprehend him," she did not, as a matter of law, impliedly consent to police riddling her home with holes and filling it with tear gas. She did not impliedly consent to police destroying her food, dishes, baby clothes, beds, couches, carpets. She did not impliedly consent to being homeless for 66 days.

**B.     The lack of 9th Circuit or U.S. Supreme Court precedent should not hinder this Court's decision.**

The facts of this case are so egregious that the lack of precedential support should come as no surprise to this Court. Police officers cannot and should not be in the game of eliciting consent to search as the legal justification to intentionally destroy property. *United States v. Torres*, 32 F.3d 225, 231-232 (7th Cir. 1994) ("We agree that 'general permission to search does not include permission to inflict intentional damage to the places or things to be searched.'") (quoting *United States v. Martinez*, 949 F.2d 1117, 1119 (11th Cir. 1992)).

In all cases where property is damaged during a search, courts look closely at whether the damage was "reasonable"—that is to say, courts note whether the damage was "minimally intrusive" or "destructive." *See, e.g., United States v. Ferrer-Montoya*, 483 F.3d 565, 568 (8th

---

[1] Whether her cooperation was voluntary or coerced is not the subject of Plaintiff's Motion for Summary Judgment and Plaintiff reserves her claim that her cooperation was the product of coercion.

**MEMORANDUM IN REPLY TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT- 3**

Cir. 2007) (officer's interpretation of consent reasonable where officer opened compartment inside vehicle in a "minimally intrusive manner" and "did no damage … in the process"); *U.S. v. Snow*, 44 F.3d 133, 135 (2d Cir. 1995) (allowing search of duffel bag inside vehicle in part because "no damage to the bags was required to gain access"). However, as Plaintiff explained in her opening brief, when police intentionally damage property to such an extent that it is rendered unusable for its intended purpose, it exceeds the scope of general consent: **No reasonable person impliedly consents to the destruction of her home and its contents.** Plaintiff's Memo. In Support of Motion for Summary Judgment (Dkt. 29-1), pp. 3-5.

Notably, while Defendants attack the lack of precedential support coming from the 9th Circuit, they fail to cite any case where police—pursuant to a general consent search—intentionally destroyed property to such an extent that it was no longer usable for its intended purpose and a court found the conduct constitutionally permissible. Defendants point to *U.S. v. Martinez*, to argue that the Eleventh Circuit may be retracting from the *Strickland* decision. However, the *Martinez* Court specifically noted that it was not alleged that the case "involved the same type of damage to the automobile as 'mutilation' of the spare tire in *Strickland*." 949 F.2d 1117, 1121 (1992). Further, the cases upon which the *Martinez* court relied addressed forcing open locked containers. *Id.* None looked at the damage inflicted upon the container or compartment. *Id.* (string citation omitted). Since *Martinez* did not involve a case where the object being search was rendered unusable for its intended purpose, it is simply inapplicable.

It should be a welcome discovery—a reflection of the value of our constitutional right to be secure in our homes—that there is no precedential support for the proposition that police officers should not ask someone if they can "get inside and apprehend someone" and, when a person cooperates, destroy the cooperating person's home. If that were the case, **no one** would

**MEMORANDUM IN REPLY TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT- 4**

cooperate with the police. Citizens expect the police to respect their home and their property, particularly when a citizen is being cooperative. This case is not an attempt to develop new and interesting law; rather, it is a case where the facts are so egregious that constitutional rights are rarely violated at this scale.

C. **Ms. West is entitled to a greater privacy interest in her home than the items at issue in the suppression cases.**

Defendants also take issue with the fact that the case upon which West relies are suppression cases. Defs.' Brief, p. 8, n. 2. Defendants cite no principled reason why the law developed in suppression cases should not also be applied in cases involving innocent civilians attempting to cooperate with law enforcement. Defendants makes no argument that suspected criminals are entitled to greater constitutional protections than cooperating civilians. Moreover, the complainants' interests in the objects at issue in the suppression cases—a tin can, a spare tire, and a metal compartment under a vehicle—all of which were designed for the intended purpose of concealing contraband, have much lesser privacy interests than Ms. West does in her home. If destroying contraband containers without express consent is unconstitutional, then destroying someone's home without express consent must, as a matter of law, be unconstitutional.

D. **West is not arguing that the "least intrusive means" should be used; rather, West is arguing that the police should not have destroyed her home without asking her permission.**

The extent of Ms. West's consent is framed by what a reasonable person in her position would believe they were consenting to. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). It is not necessary for a consenting party to guess or predict what actions or damage might occur. See *U.S. v. Ibarra*, 965 F.2d 1354, 1358 (5th Cir. 1992) ("The fact that [complainant] neglected to foresee the officer's conduct and failed specifically to state any limitations on his permission to search the

house is, we think, an insufficient basis for interpreting his consent as authorizing the officers to damage the house or any property in it.")

Moreover, as a matter of law and logic, a person cannot consent to something about which she is not informed. Informed consent must be "made with full knowledge of the risks involved and the alternatives." Black's Law Dictionary, 4th Edition, Pocket Version, p. 149.

Defendants argue that their methods were reasonable and within police protocols. Defs.' Brief, pp. 11-13. However, they have made no showing that a reasonable person in West's position is informed of those protocols. Moreover, Defendants testified that SWAT has methods and tactics that are unique to SWAT. Statement of Additional Facts in Response to Defendants' Statement of Undisputed Facts ("SOF"), ¶ 27. When West consented to the search of her home, she did not tell SWAT they could shoot tear gas into the home to force Salinas out; rather, she handed patrol officers her keys and agreed that the patrol officers could "get inside and apprehend him."

It is undisputed that Defendants never advised West that they were calling SWAT. SOF ¶¶ 24-26. Even if they had informed West that they were calling SWAT, Defendants have not made a showing that a reasonable person interacting with patrol officers would know the special tactics and resources available to SWAT, such that impliedly consenting to patrol officers entering the home reasonably encompasses consent to the tactics of heavily armed specialty teams. As a matter of law, a reasonable person handing patrol officers her keys to "enter the home to arrest him," does not impliedly consent to SWAT team using special tactics to force a suspect out of the home.

Defendants also rely extensively on the fact that they believed that Salinas was armed, dangerous, and suicidal. They make no showing that West was aware of this information or that she shared officers' beliefs. *See* Plaintiff's Motion to Strike Information Not Known to West.

**MEMORANDUM IN REPLY TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT- 6**

Contrary to Defendants' assertion, Ms. West is not advocating that the least intrusive means (i.e., using the key she gave them) should have been used. *See* Defs.' Brief, p. 12. Rather, Ms. West's position is that if officers wanted to call SWAT and shoot tear gas into her home, then they should have done something different than asked for her keys and used words other than "get inside and apprehend him." No reasonable person in Ms. West's shoes would have expected that she was agreeing to the destruction of her home.

E.   **Intentional means on purpose; it does not mean for improper purposes.**

Finally, Defendants seem to be asserting that Ms. West is required to prove that officers acted for an improper purpose when they destroyed her home. They cite no case law in support of this argument. Intentional means "done with the aim of carrying out the act," or "done by intention or design." Black's Law Dictionary, Fourth Pocket Edition, p. 396, and Merriam-Webster's Collegiate Dictionary, Eleventh Edition, p. 651. "A person acts "intentionally" when the person acts with a conscious objective to engage in particular conduct. Thus, the plaintiff must prove the defendant meant to engage in the acts that caused a seizure of the plaintiff's property. Although the plaintiff does not need to prove the defendant intended to violate the plaintiff's Fourth Amendment rights, it is not enough if the plaintiff only proves the defendant acted negligently, accidentally or inadvertently in conducting the search." Model Civil Jury Instruction 9.17 for the District Courts of the Ninth Circuit., 2007 edition, updated March 2017. In this case, Defendants developed a measured, strategic, and thought-out tactical plan to force Salinas out of the home and—only as a last resort—did they intend to enter the home to apprehend him. SOF ¶ 38. The officers did not "accidentally" riddle West's home with bullet holes and tear gas[2]—they did it on purpose. Therefore, the destruction is intentional. West need not prove anything more than that.

---

[2] West concedes that the officer losing his footing in the attic and stepping through the ceiling was an accident.

**MEMORANDUM IN REPLY TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT- 7**

F.       Conclusion

For the foregoing reasons, this Court should grant Plaintiff's Motion for Summary Judgment and find that the Defendants violated Plaintiff's Fourth Amendment rights by exceeding the scope of the consent provided by Ms. West.

II.      OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

A.       Genuine issues of material fact exist regarding whether West's consent was coerced and whether officers exceeded the scope of her consent.

1.       Determining whether West's Consent was voluntary requires the finder of fact to look at the totality of the circumstances.

There are genuine issues of material fact regarding whether Ms. West—when handing her keys over to a patrol officer and agreeing that police could "get inside and apprehend [Salinas]"—was the result of free and voluntary consent or submission to authority.  When determining whether consent to conduct a search was granted voluntarily or "was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). "In examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents." *Id.* at 229. Such an examination should occur because "[t]he existence of consent to a search is not lightly to be inferred." *Maker v. City of Tillamook, Ore.*, 2007 WL 2688230 * 3 (D. Ore. 2007). This is because, "judicial concern to protect the sanctity of the home is so elevated that free and voluntary consent cannot be found by a showing of mere acquiescence to a claim of lawful authority" *Id.* (citing *U.S. v. Shaibu*, 920 F.2d 1423, 1426 (9th Cir. 1990).

One of the biggest factors for the jury to consider in deciding the voluntariness of West's consent is that when she arrived home from registering her child at school, police officers had

effectively seized her home.  A seizure of a person occurs "when the officer, by means of physical force or show of authority has in some way restrained the liberty of a citizen may we conclude that a seizure has occurred." *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (quoting *Terry v. Ohio*, 392 U.S. 1, 19, n. 16 (1968).  A seizure of property occurs when "there is some meaningful interference with an individual's possessory interests in that property."  *Lavan v. City of L.A.*, 693 F.3d 1022, 1030-33 (9th Cir. 2012).  To determine whether a seizure of an individual has occurred, "the crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was <u>not at liberty to ignore the police presence and go about his business</u>."  *Bostick*, 501 U.S. at 437 (1991) (emphasis added).

The Ninth Circuit has offered five factors to assist in the determination of whether a person approached by police officers at her residence would believe that she were free to ignore the police presence and go about her business including: "1) the number of officers involved; 2) whether the officers' weapons were displayed; 3) whether the encounter occurred in a public or non-public setting; 4) whether the officers' officious or authoritative manner would imply that compliance would be compelled; and 5) whether the officers advised the detainee of his right to terminate the encounter."  *Orhorhaghe v. I.N.S.*, 38 F.3d 488, 494-496 (9th Cir. 1994).  Where officers are on the property for and knock and talk, "once an attempt to initiate a consensual encounter with the occupants of a home fails, 'the officers should end the knock and talk and change their strategy retreating cautiously, seeking a search warrant or conducting further surveillance.'" *U.S. v. Perea-Rey*, 680 F.3d 1179, 1188 (9th Cir. 2012) (quoting *U.S. v. Troop*, 514 F.3d 405, 4010 (5th Cir. 2008)).  Remaining in the curtilage after a non-response to a knock and talk violates the Fourth Amendment.  *Id.*

Here, police officers had effectively seized Ms. West's home when she returned from

registering her child at school. The house was surrounded by five uniformed officers. SOF ¶¶ 4-5. They had established a perimeter. SOF ¶ 4. Officer Richardson stopped West on the street and engaged her in a conversation about Salinas. SOF ¶¶ 9-17. During that conversation, Officer Richardson twice ignored that West said Salinas "might" be in the home and informed her that if Salinas was in the home and she did not tell them, she would go to jail. SOF ¶ 9-17. She had no reasonable choice but to say yes.

At no time did Officer Richardson inform West that she was "free to go about her business," or "refuse consent." Rather, she was told that if she "harbored" the felon who police suspected was in her house she should go to jail. SOF ¶ 14. No reasonable person would have thought she was free to go about her business and enter her own home when her home was under police control.

Whether Ms. West's cooperation was voluntary consent or a mere submission to the presence and authority of police officers is a question of fact that requires the jury to weigh the totality of the circumstances. Accordingly, it should not be decided in on summary judgment.

> **2. Even if Ms. West's consent was voluntary, genuine issues of material fact regarding whether officers' actions exceeded the scope of the consent preclude summary judgment.**

As explained in Section I above, West's cooperation with patrol officers did not include implicit consent to destroy her home and its contents. However, to the extent this Court is unable to conclude, as a matter of law, that police exceeded the scope of West's cooperation when they destroyed her home and its contents, then the matter is properly submitted to a jury. See *U.S. v. Ibarra*, 965 F.2d 1354, 1357 (5th Cir. 1992) ("Although the question of objective reasonableness is a question of law, the factual circumstances surrounding the consent are central to determining the nature of the consent and how it would have been understood by a reasonable person.").

### 3. The Emergency Aid Exception is Inapplicable.

Defendants argue that even if Ms. West's cooperation was not voluntary, they still were permitted to enter Ms. West's home pursuant to the emergency aid exception. This exception does not apply, however, and defendants cannot rely on it to shield their actions. The emergency aid exception to the warrant requirement permits "law enforcement officers [to] enter a home without a warrant <u>to render emergency assistance</u> to an <u>injured occupant</u> or to <u>protect an occupant from imminent injury</u>." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (emphasis added). In this case, the officers did not "enter West's home" for purposes of rendering aid to a potentially suicidal suspect. Rather, they shot tear gas into the home to force out the suspect so that they could arrest him. SOF ¶ 42. In short, the officers did not even attempt to do that which the emergency aid exception allows them to do: go quickly into a home to render care or prevent harm. Because the officers' actions belie their claim that they were acting under the emergency aid exception, this Court should reject their argument.

### B. The reasonableness of the tactical plan is not at issue in this lawsuit.

Defendants put before this Court the issue of whether the tactical plan that was executed was unreasonable and whether the search was unnecessarily destructive. Defs.' Brief, pp. 22-27. However, Plaintiff did not plead either of these issues. *See generally,* First Amended Complaint (Dkt. 20). Rather, Ms. West alleged that the officers coerced her consent and, thereafter, exceeded the scope of her general consent when they intentionally destroyed her home and its contents. The second issue—whether the officers exceeded the scope of her consent—depends exclusively on what a reasonable person in Ms. West's position believed she was consenting to. Unless a reasonable person in Ms. West's position knew something (anything) about the destructive nature of the tactical plan intended by the officers, it is impossible for her to have believed or understood

**MEMORANDUM IN REPLY TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT- 11**

she was consenting to it. Whether the tactical plan was within police policy, whether it was reasonable, or whether it resulted in a constitutionally defensible level of property destruction does not factor into that analysis. For these reasons, the issues presented by Defendants at pages 22-27 of their opposition brief (Dkt. 33-1) are simply irrelevant to the matters at hand.

**C.     The Individual Officers are not entitled to Qualified Immunity.**

Defendants have adequately stated the law regarding qualified immunity. However, defendants are not entitled to qualified immunity because both of the constitutional violations Ms. West alleges are well settled: (i) a search based on coerced consent is invalid and unconstitutional and (ii) a search that exceeds the scope of consent is unconstitutional. For these reasons, this Court should reject the qualified immunity defenses of Richardson, Seevers, Winfield, and Allgood.

### 1.     Detective Richardson violated a clearly established constitutional right when he acted on consent that was the product of coercion.

This Court should reject Defendants' claim that Detective Richardson is entitled to qualified immunity because their argument in support of such claim speaks to the facts (i.e., whether West's consent was voluntary), rather than the law (i.e., whether coercing consent to search is a well-settled constitutional violation). Moreover, because it is well settled that coercing consent is a constitutional violation, qualified immunity does not apply in this case.

As discussed at length in Section II(A)(1), supra, genuine issues of material fact preclude summary judgment regarding the voluntariness of Ms. West's consent. The undisputed evidence proves that it is well settled that coercing consent is impermissible: Caldwell Police polices address the issue (SOF ¶ 41); and, Defendants' expert speaks to the issue (Declaration of Landon Brown, (Dkt. 33-5), Ex. G (Dkt. 33-12 at 6:146-148). There is a Ninth Circuit pattern jury instruction specifically addressed to the issue. *See* Model Civil Jury Instruction 9.17 for the District Courts of the Ninth Circuit., 2007 edition, updated March 2017. It cannot be reasonably disputed that the

issue is not well settled.

### 2. Officers Winfield and Seevers violated West's constitutional rights by exceeding the scope of her general consent.

As Plaintiff argued in her motion for summary judgment, Ms. West has alleged a constitutional violation against Defendants Winfield and Seevers by exceeding the scope of any alleged consent provided by Ms. West. It is well established that when officers are conducting a search pursuant to consent, the search cannot exceed the scope of the consent that was provided. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). If a search exceeds the scope of consent, then it is unconstitutional. *See id*.

It is also well-settled that the scope of consent is that to which a reasonable person believes she is consenting, under a totality of the circumstances. *Id*. Here, West has argued that, as a matter of law, police exceeded the scope of her general consent when they intentionally destroyed her home and its contents. Dkt. 29-1. However, if this Court rejects this argument and finds that genuine issues of material fact exist, then it is for the jury to determine, based on the totality of the circumstances, to what a reasonable person in Ms. West's position believed she was consenting. If the tactical plan designed and executed by Officers Seevers and Winfield exceeded the scope of consent determined by either this Court (as a matter of law) or the jury (after presentation of evidence), then officers Seevers and Winfield have violated Ms. West's constitutional rights.

In reply, Defendants may argue that waiting until trial for a factual determination regarding to what a reasonable person in Ms. West's position would have believed she was consenting undercuts the value of a qualified immunity defense. While qualified immunity generally should be decided early in a case since it is "an entitlement not to stand trial or face the other burdens of litigation," *Saucier v. Katz*, 533 U.S. 194, 200, (2001) (receded from on other grounds), when qualified immunity is so closely tied to a question of fact that the question of fact must be resolved

**MEMORANDUM IN REPLY TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT- 13**

by the jury, then it is proper for the District Court to defer its decision on qualified immunity until the question of fact is resolved. *See Cunningham v. City of Wenatchee*, 345 F.3d 802, 806-807 (9th Cir. 2003) and *Monteiro v. City of Elizabeth*, 436 F.3d 397 (3d Cir. 2006) (if a question of material fact is sufficiently intertwined with the question of law then the question must go to the jury).

It is well settled that, when conducting a search, officers cannot exceed the scope of consent given by the consenting party. While Ms. West believes that this Court can and should find as a matter of law that no reasonable person ever impliedly consents to the intentional destruction of her property, this Court may disagree. In such case, at a minimum, the scope of Ms. West's consent is a question of fact that must go to the jury. Because Defendants Winfield and Seevers are so closely tied to an underlying question of fact that must be resolved in this case, (i.e., whether Ms. Wests consent included permission for police to intentionally destroy her property) this Court should refrain from deciding whether Defendants are entitled to qualified immunity until after the material question of fact is resolved

### 3. Chief Allgood

Plaintiff agrees with Defendants' position that Chief Allgood was not involved in (i) coercing Ms. West's consent to "get into the home to apprehend [Salinas]" or (ii) exceeding the scope of any consent that Ms. West may have given. Plaintiff also agrees that Chief Allgood was merely a passive observer with respect to the tactical operations that damaged Ms. West's home and its contents. Therefore, as to Count I of Ms. West's complaint, Plaintiff agrees to dismiss claims against Chief Allgood acting in either his individual or supervisory capacity.

Plaintiff **disagrees** with defendants, however, with respect to Count II of Ms. West's First Amended Complaint.³ In Count II of Ms. West's complaint, she alleges that the Caldwell Police

---

³ It should be noted that Defendants have not moved for summary judgment on behalf of any individually named

**MEMORANDUM IN REPLY TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT- 14**

Department and its individual officers unconstitutionally seized her property when they engaged in an eight-hour standoff, shot canisters of tear gas through the doors and windows, destroying her home and its contents and rendering her homeless for 66 days. *See* First Amended Complaint (Dkt. 20) at ¶¶ 43-53.

Under the Fourth Amendment, a "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interests in that property. *Lavan v. City of L.A.*, 693 F.3d 1022, 1030-33 (9th Cir. 2012). In *Lavan*, officers seized the personal effects of a homeless person, camping illegally. The Ninth Circuit held that "by seizing and destroying Appellees' unabandoned legal papers, shelters, and personal effects, the City meaningfully interfered with Appellees' possessory interests in that property." *Id*. at 1030. The Ninth Circuit went on to note, "No more is necessary to trigger the Fourth Amendments reasonableness requirement." *Id*.

Even if the City of Caldwell was otherwise reasonable in how it conducted the search for Salinas, that it destroyed Ms. West's home and its contents is a sufficiently meaningful interference with her possessory interest in her property, that is a Fourth Amendment violation. Indeed, the United States Supreme Court has recognized that even the destruction of illegal contraband—which turned a temporary deprivation into a permanent deprivation—constitutes an illegal seizure: "the government's testing of illegal cocaine (which resulted in the destruction of a portion of the cocaine) was a 'seizure' that 'affect[ed] respondents' possessory interests protected by the [Fourth] Amendment, since by destroying a quantity of the powder it converted what had been only a temporary deprivation of possessory interest into a permanent one.'" *Id.* (citing *United States v. Jacobsen*, 466 U.S. 109, 124-125 (1984)). Moreover, it is well settled that "a seizure lawful at its

---

parties or the City of Caldwell with respect to Count II of Ms. West's First Amended Complaint.

**MEMORANDUM IN REPLY TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT- 15**

inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possession interest protected by the Fourth Amendment's prohibition on 'unreasonable seizures.'" *Id.*

Chief of Police Allgood testified that, following the standoff, he walked through Ms. West's home and observed the extent of the damage. SOF ¶¶ 43, 45. He agreed that Ms. West's home was uninhabitable for Ms. West and her children. SOF ¶ 46. Chief of Police Allgood testified in his deposition that he was the final decision maker with respect to righting these wrongs on behalf of the citizens whose property had been destroyed. SOF ¶ 47. And that in this case, he assumed that the county's insurance company was handling, but does not know how that resolved. SOF ¶ 47. It is undisputed that Caldwell Police destroyed Ms. West's home and its contents, rendering it unlivable for a period of 66 days. SOF ¶ 46. That constitutes an unlawful, unconstitutional interference with a possessory interest in her home and because Chief Allgood was the final policy maker with respect to remediating that issue, the trier of fact must be allowed to determine if, at any time in the 66 days following the seizure of Ms. West's home, the City of Caldwell's interference with her possessory interests in her home and its contents were unreasonable.

Accordingly, there are genuine issues of material fact to proceed to trial against Chief of Police Allgood in his individual capacity and in his supervisory capacity (*Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989). Moreover, Chief Allgood's actions as the final policy maker on behalf of the City of Caldwell respecting these decisions also preclude summary judgment against the City. *See Lytle v. Carl*, 382 F.2d 978, 981 (9th Cir. 2004) and *Goldstein v. City of Long Beach*, 715 F.3d 750, 753 (9th Cir. 2013).

**MEMORANDUM IN REPLY TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT- 16**

D.     *Monell* **Claim Against the City of Caldwell.**

Defendant City of Caldwell is not entitled to summary judgment because there are genuine issues of material fact regarding the City's liability under *Monell*. The law is well-settled law that the destruction of personal property (and, in this case, real property) is a constitutionally impermissible interference with a possessory interest in real property. *See, e.g., Lavan v. City of Los Angeles*, 693 F.3d 1022, 1030 (2012).

Chief Allgood testified that, despite the fact that this type of thing happens from time to time, the City does not have a policy regarding the destruction of a person's home and its contents—but rather that the burden rests on the citizen to remediate police interference with their constitutional right and otherwise just deal with the City's insurer. SOF ¶ 47. This is sufficient to give rise to a genuine issue of material fact on the grounds that the City failed to adopt a policy and/or train personnel on how to address and remediate destruction of personal property, thereby rendering such destruction an unreasonable seizure. *See Tsao v. Desert Palace, Inc.,* 698 F.3d 1128, 1143 (9th Cir. 2012) (addressing failure to implement policy). Moreover, Chief Allgood testified that he is the final decision maker with respect to dealing with these issues. SOF ¶ 47. That is, he speaks for the City with respect to remediating the seizure of Ms. West's property, and therefore, ensuring that any destruction of her property is reasonably addressed. As a result, the City is subject to liability under *Goldstein* on Count II of Ms. West's First Amended Complaint.

With respect to Count I of Ms. West's First Amended Complaint, the City is subject to liability under *Monell* because the policies at issue are inadequate and, significantly, the final decision maker in this particular event—Lt. Seevers—is the City's final policy maker regarding unlawful searches and seizures. SOF ¶ 40. Not only was Lt. Seevers the City's final policy maker with respect to the policies governing lawful searches and seizures, Lt. Seevers developed the

SWAT team's tactical plan. SOF ¶ 40. Accordingly, Lt. Seevers bound the City of Caldwell when he ratified the conduct of the "search" based on invalidly obtained consent. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) and *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996) (discussing ratification of the final policy maker). Moreover, Lt. Seevers bound the City of Caldwell when he developed the tactical plan that was used to destroy Ms. West's home. *Goldstein*, 715 F.3d at 753. Because Lt. Seevers was the City of Caldwell's final policy maker with regard to the conduct of searches and seizures, Lt. Seever's ratification of Officer Richardson's invalid consent and Lt. Seevers' direct involvement in developing the tactical plan are sufficient to trigger entity liability against the City of Caldwell.

### III. CONCLUSION

For the foregoing reasons, Ms. West asks that her Motion for Partial Summary Judgment be granted and that all portions of Defendants' Motion for Summary Judgment be denied.

**DATED** this \_\_\_\_\_ day of May, 2017.

                                                    FISHER RAINEY HUDSON

                                                   /s/ Rebecca A. Rainey
                                                   Rebecca A. Rainey
                                                   Attorney for Plaintiff

### **CERTIFICATE OF SERVICE**

   I HEREBY CERTIFY that on the \_\_\_\_ day of May 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing and a copy of this document to the following persons:

Landon Brown
Attorney for Defendants
950 W. Bannock Street, Ste. 610
Boise, Idaho 83702
landon@naylorhales.com
(208) 383-9511

                  /s/ Rebecca A. Rainey
                  Rebecca A. Rainey
                  Attorney for Plaintiff