Vaughn Fisher, ISB No. 7624
Rebecca A. Rainey, ISB No. 7525
Christopher F. Brown, ISB No. 9328
FISHER RAINEY HUDSON
950 W. Bannock St., Ste. 630
Boise, ID 83702
Telephone: (208) 345-7000
Facsimile: (208) 514-1900
vaughn@frhtriallawyers.com
rar@frhtriallawyers.com
chris@frhtriallawyers.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHANIZ WEST, an individual,<br><br>            Plaintiff,<br><br>vs.<br><br>CITY OF CALDWELL; CITY OF CALDWELL POLICE DEPARTMENT; FORMER CHIEF CHRIS ALLGOOD in his official and individual capacity; SERGEANT DOUG WINFIELD in his official and individual capacity; LIEUTENANT ALAN SEEVERS in his official and individual capacity; OFFICER MATTHEW RICHARDSON in his official and individual capacity and DOES I-X,<br>            Defendants. | Case No.: 1:16-cv-359<br><br>**STATEMENT OF ADDITIONAL FACTS IN RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS (Dkt. 33-2)** |

1. When Shaniz West ("West") left her home, she told Fabian Salinas ("Salinas") to get his things and, when he left, to lock the "top lock" (meaning the chain lock on the front door) and leave the back door unlocked. Affidavit of Rebecca Rainey in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Rainey Aff.), Ex. A (Deposition of Shaniz West taken on February 8, 2017 ("West Depo.")) at 71:18-72:9.

2. When West left, she had no concerns about Salinas because she "just wanted him to get his things and leave, and [she] thought [she] would just come home and relax after that." Rainey Aff. Ex. A (West Depo.) at 74:6-12.

3. West left to register her son for school and was gone for about 45 minutes. Rainey Aff. Ex. A (West Depo.) at 78:20-25; 81:15-82:9.

4. When West returned, she found her home "surrounded with officers." Rainey Aff., Ex. B (Deposition of Joey Hoadley taken on December 16, 2016 ("Hoadley Depo.")) at 9:4-7.

5. Five police officers, to be exact: Officers Joey Hoadley ("Hoadley"), Arguello, Hemmert, Schreiber and Detective Matt Richardson ("Richardson"). Rainey Aff. Ex. B (Hoadley Depo.) at 20:14-25; 21:15-18.

6. It did not make sense to West why police officers where in her backyard. Rainey Aff. Ex. A (West Depo.) at 82:15-20.

7. One officer was guarding the front door and garage door, Officer Hemmert was in the backyard, having gained entry through an open gate, Hoadley was on the east side of the home, watching both the front and back and two other officers generally roving

around the home. Rainey Aff. Ex. B (Hoadley Depo.) at 22:18-22; 22:25-23:3; 23:6-8; 23:21-24:4.

8. The police had been at West's home for about 15 minutes when she arrived. Rainey Aff. Ex. B (Hoadley Depo.) at 40:17-20.

9. Richardson approached and asked Ms. West, "Where is Fabian at?" Rainey Aff. Ex. C (Deposition of Matt Richardson taken on Janauary 3, 2017 ("Richardson Depo.")) at 61:20-23.

10. West replies, "He might be inside." Rainey Aff. Ex. C (Richardson Depo.) at 61:25-62:3.

11. Richardson repeats her response and asks for confirmation: "He might be inside? Is he inside." Rainey Aff. Ex. C (Richardson Depo.) at 62:6-17.

12. For a second time, West responds with uncertainty: "He might be." Rainey Aff. Ex. C (Richardson Depo.) at 62:15-21

13. Richardson believed that West was lying. Declaration of Matthew Richardson. (Docket 33-4) ¶ ¶ 3-4.

14. Richardson then told West: "If you harbor him, you're going to jail for felony harboring." Rainey Aff. Ex. C (Richardson Depo.) at 63:3-6.

15. Ms. West did not understand what Officer Richardson had told her and asked for clarification. Rainey Aff. Ex. C (Richardson Depo.) at 63: 8-18.

16. Richardson then tells Ms. West: "If he's in there, and you're not telling us, you can get in trouble for that. Do you understand." And Richardson asks again, "Is he in there." Rainey Aff. Ex. C (Richardson Depo.) at 63:20-64:2.

**STATEMENT OF ADDITIONAL FACTS IN RESPONSE TO DEFENDANTS'
STATEMENT OF UNDISPUTED FACTS - 3**

17. West, who had been away from her home for approximately 45 minutes, was unsure whether Salinas was in the home, but "felt coerced to say that [Salinas] was in the home because [she] didn't know." Rainey Aff. Ex. A (West Depo.) at 18:17-21.

18. Ms. West, having previously witnessed her mother get arrested for harboring a fugitive, testified that "once he mentioned that, I felt like I was threatened, and I felt like there was no – I felt like I had to say what I needed to say, and I had to cooperate as much as possible. So that's why I gave my keys to the police." Rainey Aff. Ex. A (West Depo.) at 12:19-25.

19. Richardson asked the question: "Shaniz, let me ask you this. Do we have your permission to get inside your house and apprehend him?" Rainey Aff. Ex. C (Richardson Depo.) at 69:12-15.

20. Hoadley testified that "as far as a home or vehicle, if they give consent, it's full consent unless they restrict it." Rainey Aff. Ex. B (Hoadley Depo.) at 54:3-11.

21. Hoadley initially considered making entry into the home using the keys provided by Ms. West; determined it was too dangerous, and then left the keys in the door and elected, instead, to call SWAT. Rainey Aff. Ex. B (Hoadley Depo.) at 57:2-7; 17-20.

22. Hoadley did not advise Ms. West that he was going to use a methodology other than the keys to enter West's home. Rainey Aff. Ex. B (Hoadley Depo.) at 58:25-59:3.

23. Hoadley has never received any training regarding what methods can be used when searching someone's home pursuant to consent. Rainey Aff. Ex. B (Hoadley Depo.) at 59:4-14.

24. Richardson did not tell West that they were contacting SWAT. He is unsure whether anyone else did. Rainey Aff. Ex. C (Richardson Depo.) at 68:9-16.

25. Hoadley does not recall any discussion with West about calling SWAT to the scene. Rainey Aff. Ex. B (Hoadley Depo.) 48:10-16.

26. Ms. West does not remember any of the officers commenting that they were going to call SWAT. Rainey Aff. Ex. A (West Depo.) at 84:24:85:2.

27. SWAT has different tools and tactics than those available to a normal patrol officer responding to a call. These include "specialized training, weapons, and breaching tools." Rainey Aff. Ex. B (Hoadley Depo.) at 60:3-6.

28. Hoadley does not recall any discussion with West about the fact that they had no intent to use the key. Rainey Aff. Ex. B (Hoadley Depo.) at 48:17:22.

29. Lieutenant Alan Seevers ("Seevers") testified that the key would be the last resort, not the initial action. Rainey Aff. Ex. D (Deposition of Alan Seevers, taken on December 13, 2016 ("Seevers Depo.")) at 33:9-20.

30. Seevers did not speak with anyone that evening regarding West's concerns about her house being destroyed and whether she'd be able to return home with her children. Rainey Aff. Ex. D (Seevers Depo.) at 77:6-20.

31. No one had any discussions with West about the fact that gas canisters would be shot into her home, through windows and doors. Rainey Aff. Ex. E (Deposition of Doug Winfield, taken on December 13, 2016 ("Winfield Depo.")) at 62:19-23.

32. West did not give CPD permission to deploy a canister of tear gas through her back door. Rainey Aff. Ex. E (Winfield Depo.) at 88:3-7.

33. West did not give CPD permission to deploy tear gas through any other windows. Rainey Aff. Ex. E (Winfield Depo.) at 88:8-12.

34. In response to an inquiry regarding whether she could go towards her home, Richardson responded that West needed to stay where she was—"He didn't want me walking towards my home." Rainey Aff. Ex. A (West Depo.) at 86:12-18.

35. Shortly after that, Hoadley asked West if there was anyone who could pick her up and Hoadley allowed West to use his cellphone to arrange for someone to pick her up and take her away from the scene. Rainey Aff. Ex. A (West Depo.) at 86:18-21.

36. West was no longer at her home when SWAT arrived. West Depo. 89:6-14; 163:3-14

37. Lt. Seevers oversaw making changes to and updating the policy manual. Rainey Aff. Ex. F (Deposition of Chris Allgood taken on December 16, 2016 ("Allgood Depo.")) at 12:8-24.

38. The SWAT tactical plan was developed to force Salinas out of the home, and only as a last resort, did SWAT intend to enter the home to apprehend Salinas. Rainey Aff. Ex. E (Winfield Depo.) at 30:17-33:3.

39. Chief of Police, Chris Allgood ("Allgood") went to the scene, as it was his custom to do, anytime SWAT is called out. Rainey Ex. F (Allgood Depo.) at 14:9-17.

40. Though Allgood was on scene, Lt. Seevers remained the final decision maker with respect to the tactical operation. Rainey Ex. F (Allgood Depo.) at 18:19-22.

41. Per Caldwell Police Department Policy, "Consent must be given voluntarily. If an officer requests consent from a citizen under circumstances which a reasonable person would consider coercive, then officers must seek a warrant." Rainey Aff. Ex. D (Seevers Depo.) Exhibit 3, p. 2, ¶ H.

42. Tear gas was shot into West's home. Rainey Aff. Ex. E (Winfield Depo.) at 62:8-15.

43. After the stand-off, Allgood went into the home and surveyed the damage. Rainey Aff. Ex. F (Allgood Depo.) at 32:15-18.

44. Allgood is the final decision maker with respect to making sure that a citizen who has had her property damaged during police activities is properly taken care of. Aff. Ex. F (Allgood Depo.) at 35:23-36:8.

45. Allgood noted the smell of gass, broken entryways, windows, and doors. Aff. Ex. F (Allgood Depo.) at 33:1-5.

46. Allgood agreed that the home would not be a habitable place for West and her children. Aff. Ex. F (Allgood Depo.) at 35:6-9.

47. Allgood testified that Caldwell Police would not have addressed the fact that their actions rendered Ms. West homeless for two months and that he abdicated his final policy making authority in dealing with Ms. West to Caldwell Police Department's insurance company. Aff. Ex. F (Allgood Depo.) at 36:22-25; 39:19-40:7.

DATED this 22nd day of May, 2017.

                                                FISHER RAINEY HUDSON

                                                */s/ Rebecca Rainey*
                                                Rebecca Rainey
                                                Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 22nd day of May, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing and a copy of this document to the following persons:

Landon Brown – of the Firm
Attorney for Defendants
950 W. Bannock Street, Ste. 610
Boise, Idaho 83702
landon@naylorhales.com
(208) 383-9511

*/s/ Rebecca Rainey*
Rebecca Rainey – Of the Firm
Attorney for Plaintiff