# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| SHANIZ WEST, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF CALDWELL; CITY OF CALDWELL POLICE DEPARTMENT; FORMER CHIEF CHRIS ALLGOOD in his official and individual capacity; SERGEANT DOUG WINFIELD in his official and individual capacity; LIEUTENANT ALAN SEEVERS in his official and individual capacity; OFFICER MATTHEW RICHARDSON in his official and individual capacity in his official and individual capacity; and DOES I-X,<br><br>Defendants. | Case No.: 1:16-cv-00359-REB<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**DEFENDANTS' MOTION TO STAY**<br><br>**(Docket No. 55)**<br><br>**PLAINTIFF'S MOTION TO RETAIN JURISDICTION AND CERTIFY DEFENDANTS' APPEAL AS FRIVOLOUS**<br><br>**(Docket No. 57)** |

Now pending before the Court are (1) Defendants' Motion to Stay (Docket No. 55), and (2) Plaintiff's Motion to Retain Jurisdiction and Certify Defendants' Appeal as Frivolous (Docket No. 57). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. BACKGROUND

A. **Factual Background**

Plaintiff Shaniz West alleges that Defendants violated her Fourth Amendment rights to be free from unreasonable search and seizure. Plaintiff's claims arise from the August 11, 2014 search of the house she was living in (the "Residence") for wanted felon Fabian Salinas. That

**MEMORANDUM DECISION AND ORDER - 1**

day, police officers responded to a 911 call from Plaintiff's grandmother, requesting assistance at the Residence because Mr. Salinas was inside, on drugs, and threatening Plaintiff with a BB gun. After arriving at the Residence, police officers knocked on the door and called out for Mr. Salinas or Plaintiff but received no response.

Plaintiff had left the Residence earlier to register her son for elementary school. When she returned, a short time after the police officers had arrived, Plaintiff approached the police officers from the sidewalk. Plaintiff told the officers that Mr. Salinas had been there earlier to retrieve his belongings, that she told him to leave, and that she was unsure whether he was still inside. The officers believing that Plaintiff may not have been telling the truth about Mr. Salinas's location. Detective Matthew Richardson told her that if Mr. Salinas was inside the Residence and she did not tell officers that fact, then she could be in trouble for harboring a felon. Plaintiff then said that Mr. Salinas was in the Residence and gave the police a key and permission to enter the Residence.

After Plaintiff left the scene, a police SWAT Team (consisting of 18 officers) arrived, which include an armored vehicle that was then parked in front of the Residence. The SWAT Team made loudspeaker announcements telling Mr. Salinas to come out of the Residence, but he did not come out. The SWAT Team then used a shotgun to shoot tear gas canisters through windows and the garage door. The SWAT Team waited approximately 1 ½ hours for the tear gas to spread throughout the Residence, continuing to call on Mr. Salinas to exit the Residence. Mr. Salinas did not come out. The SWAT Team then attempted to enter the Residence, using the key obtained from Plaintiff to unlock the front door and the deadbolt; however, the front door was chained shut. The entry team then moved to the back door where the glass was already removed from the tear gas cannister that had been shot through the door. A SWAT team member made entry by reaching an arm through the broken glass and unlocking the back door.

**MEMORANDUM DECISION AND ORDER - 2**

After entering the Residence, the entry team "held" and again called out for Mr. Salinas. There was no response. The entry team moved further into the Residence, held again, and called out for Mr. Salinas again. Eventually, the entry team searched the entire house, but Mr. Salinas was never located. Apparently, he had left the Residence earlier that day.

When Plaintiff was permitted to re-enter her Residence, she claims that she found it destroyed. According to Plaintiff, her and her children's personal belongings were saturated with tear gas, debris from the walls and ceilings littered the Residence, and broken glass was everywhere. Plaintiff and her children were not able to re-occupy the Residence until two months later. The City of Caldwell paid for Plaintiff and her children to live in a hotel for three weeks and paid Plaintiff $900.00 for damage to her personal property.

In this lawsuit, Plaintiff brings three claims against Defendants City of Caldwell and the Caldwell Police Department (collectively the "Caldwell City Defendants"), Chris Allgood (the Chief of the Caldwell Police Department), Doug Winfield (the Caldwell Police SWAT Team Leader), Alan Seevers (the SWAT Team Commander), Detective Richardson, and unnamed officers from the Caldwell Police Department involved in the August 11, 2014 raid at the Residence: (1) Unreasonable Search (against all Defendants); (2) Unreasonable Seizure (against all Defendants); and (3) Conversion (against only the non-Caldwell City Defendants).

B.  **Procedural Background**

On April 10, 2017, Plaintiff moved for summary judgment. Defendants opposed Plaintiff's summary judgment efforts on May 1, 2017 and moved separately for summary judgment against Plaintiff. Following oral argument, the Court (1) denied Plaintiff's Motion for Summary Judgment and (2) granted, in part, and denied, in part, Defendants' Motion for Summary Judgment. *See generally* 3/28/18 MDO (Docket No. 48). Relevant here, as to the latter disposition, the Court concluded that qualified immunity neither applied to Detective

**MEMORANDUM DECISION AND ORDER - 3**

Richardson (on the issue of whether Plaintiff's consent was voluntary or coerced) nor to SWAT Team Commander Seevers and SWAT Team Leader Winfield (at least to the extent their conduct was premised upon the development and execution of the tactical plan used to extract Mr. Salinas from the Residence). *See id.* at pp. 23-25, 30-31 (citing *Davis v. United States*, 854 F.3d 594, 601 (9th Cir. 2017) (holding officers are not entitled to qualified immunity as matter of law where genuine issues of material fact exist regarding whether seizure was reasonable); *McCloskey v. Courtnier*, 2012 WL 646219, *3 (N.D. Cal. 2012) ("[B]ecause the facts relevant to the issue of qualified immunity are inextricably intertwined with the disputed facts relevant to the issue of excessive force, defendants are not entitled to summary adjudication on the issue of qualified immunity.")).[1]

On April 17, 2018, Defendants (Detective Richardson, SWAT Team Commander Seevers and SWAT Team Leader Winfield only) filed a Notice of Appeal, appealing "the Court's Memorandum Decision and Order denying [their] Motion for Summary Judgment for Qualified Immunity . . . ." Not. of Appeal (Docket No. 50). Thereafter, Defendants' counsel asked the court whether a stay would be entered given Defendants' appeal.

A status conference was held on April 24, 2018, during which Defendants' counsel argued that a stay should be entered under applicable law. Plaintiff's counsel disagreed, arguing that the Court's denial of these individual Defendants' Motion for Summary Judgment on qualified immunity grounds was based on questions of fact and, therefore, Defendants' appeal is inappropriate and a stay should not be entered.

---

[1] The Court granted Defendants' Cross Motion for Summary Judgment in the following respects: (1) Plaintiff's claims against the Caldwell Police Department and the individual defendants in their official capacity were dismissed; (2) as to SWAT Team Commander Seevers and SWAT Team Leader Winfield, qualified immunity applied to the extent their conduct was premised upon Plaintiff's allegedly coerced consent; (3) qualified immunity applied to Chief Allgood; and (4) Plaintiff's *Monell* claims against the City of Caldwell were dismissed. *See* 3/28/18 MDO, pp. 20-31 (Docket No. 48).

**MEMORANDUM DECISION AND ORDER - 4**

The Court requested additional briefing on the issue and Defendants filed a formal Motion to Stay the action. *See* Mot. to Stay (Docket No. 55). Plaintiff opposed Defendants' request, arguing that the appeal is frivolous, while separately filing a Motion to Retain Jurisdiction and Certify Defendants' Appeal as Frivolous. *See* Mot. to Retain Juris & Cert. Appeal as Friv. (Docket No. 57). These Motions are addressed and resolved in this Decision.

## II. DISCUSSION

**A.    Legal Standards**

    A.    <u>Motion to Stay</u>

The filing of an interlocutory appeal of a court's denial of qualified immunity automatically divests the district court of jurisdiction to proceed with trial on the issues involved in the appeal. *See City of L.A. Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 886 (9th Cir. 2001); *see also Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) (holding that denials of qualified immunity can be appealable). This is so because "[q]ualified immunity is immunity from suit, not just a defense to liability." *Knox v. Sw. Airlines*, 124 F.3d 1103, 1106 (9th Cir. 1997). The immunity "is effectively lost if a case is erroneously permitted to go to trial." *Mitchell*, 472 U.S. at 526. A subsequent appeal from final judgment does not provide effective review. *See id.* at 526-27.

"District courts have inherent authority to stay proceedings before them." *Rohan ex rel. Gates v. Woodford*, 334 F.3d 803, 817 (9th Cir. 2003). The power to stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). This power also comes from "the power of every court to manage the cases on its docket and to ensure a fair and efficient adjudication of the matter at hand." *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) (citing *Gold v. Johns-Manville Sales*

**MEMORANDUM DECISION AND ORDER - 5**

*Corp.*, 723 F.2d 1068, 1077 (3d Cir. 1983)). The decision whether to stay a civil action is left to the sound discretion of the district court. *Rohan*, 334 F.3d at 817.

In deciding whether to stay a pending proceeding, a court should weigh all relevant "competing interests." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (internal quotation marks omitted). "Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which would be expected to result from a stay." *Id*. (quoting *CMAX Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

B.   Motion to Certify Appeal as Frivolous

Even though an appeal of an order denying qualified immunity "normally divests the district court of jurisdiction to proceed with trial" under the Ninth Circuit's decision in *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992), a district court "may certify the appeal as frivolous and may then proceed with trial[.]" *Padgett v. Wright*, 587 F.3d 983, 985 (9th Cir. 2009) (citing *Mitchell*, 472 U.S. at 530). If deemed frivolous, district court "may certify, in writing, that defendants have forfeited their right to pretrial appeal, and may proceed with trial." *Chuman*, 960 F.2d at 105. If a district court certifies an appeal as frivolous, the defendant may then apply to the Ninth Circuit for a discretionary stay. *See id*. at 105 n.1.

"'An appeal is frivolous if the results are obvious, or the arguments of error are wholly without merit.'" *In re George*, 322 F.3d 586, 591 (9th Cir. 2003) (quoting *Maisano v. United States*, 908 F.2d 408, 411 (9th Cir. 1990)). An appeal that is wholly without merit is one that is "'so baseless that it does not invoke appellate jurisdiction,' such as when 'the disposition is so plainly correct that nothing can be said on the other side.'" *Schering Corp. v. First DataBank Inc.*, 2007 WL 1747115, *3 (N.D. Cal. 2007) (quoting *Apostol v. Gallion*, 870 F.2d 1335, 1339

**MEMORANDUM DECISION AND ORDER - 6**

(7th Cir. 1989)). However, "[t]he power [to certify an appeal as frivolous] must be used with restraint." *Apostol*, 870 F.2d at 1339. Absent such written certification, the district court is automatically divested of jurisdiction to proceed with trial. *See Chuman*, 960 F.2d at 105.

**B.     Defendants' Appeal is Not Frivolous**

Importantly, appellate jurisdiction does not extend to *all* denials of qualified immunity on summary judgment – for example, such jurisdiction does not exist to decide whether there is a genuine issue of material fact. *See Ames v. King Cty.*, 846 F.3d 340, 347 (9th Cir. 2017) ("Where the district court has determined the parties' evidence presents genuine issues of material fact, such determinations are not reviewable on interlocutory appeal."). The parties' arguments and at-issue Motions sit upon this fulcrum.

Plaintiff contends that the Court's denial of qualified immunity on summary judgment (at least with respect to Detective Richardson, SWAT Team Commander Seevers and SWAT Team Leader Winfield) was based solely on issues of fact and, thus, unappealable. *See, e.g.*, 4/26/18 Ltr. from Fisher to Castleton, Attached as Ex. A to Mot. to Stay (Docket No. 55, Att. 2) ("Judge Bush denied your clients' summary judgment motion because of questions of fact, not because the law is unsettled. Judge Bush expressly noted, based on existing case law, that the facts that you argued in support of your claims of qualified immunity are inextricably intertwined with the merits of the case."). Defendants disagree, arguing that their appeal is more nuanced in that it challenges the Court's application of the law on qualified immunity. *See, e.g.*, Opp. to Mot. to Retain Juris & Cert. Appeal as Friv., p. 3 (Docket No. 62) ("Here, the District Court denied qualified immunity for Officer Richardson, Lieutenant Seevers, and Sergeant Winfield based on an incorrect analysis of qualified immunity. The District Court did not follow the proper qualified immunity analysis as repeatedly set out by the Supreme Court and applied by the Ninth

**MEMORANDUM DECISION AND ORDER - 7**

Circuit. Specifically, the District Court defined the clearly established law at an impermissible level of generality.").

The Court's decision speaks for itself, but for these purposes the Court is persuaded that Defendants' appeal arguably embraces more than the factual issues orbiting Plaintiff's claims. And, to be clear, the existence of genuine issues of material fact that may have precluded entry of summary judgment on qualified immunity does not ipso facto end an appeal before it begins. *See Ames*, 846 F.3d at 347 ("However, we may adjudicate 'legal' interlocutory appeals; that is, we may properly review a denial of qualified immunity there a defendant argues . . . that the facts, even when considered in the light most favorable to the plaintiff, show no violation of a constitutional right, or no violation of a right that is clearly established in law."). Rather, even accepting the district court's determination that there is a genuine dispute of fact as to whether a constitutional right was violated, appellate courts may still consider whether such a violated constitutional right (informed by taking the disputed facts in the light most favorable to the party asserting injury) was clearly established at the time of the incident such that a reasonable officer would have understood his conduct to be unlawful in that situation – highlighting the qualified immunity defense's two-pronged approach. *See, e.g., A.K.H. v. City of Tustin*, 837 F.3d 1005, 1010 (9th Cir. 2016) ("A defendant who appeals a denial of qualified immunity on the ground that his conduct did not violate the Fourth Amendment and, *in any event, did not violate clearly established law has raised legal issues that may be properly heard in an interlocutory appeal*.") (emphasis added). It is on this separate point that Defendants' appeal turns.

Hence, it is not appropriate to certify the Defendants' appeal as frivolous. Although the Court's prior ruling does not adopt the Defendants' characterization and substance of the constitutional arguments underlying their qualified immunity claim, that disagreement does not meet the demanding standard for certifying an appeal as frivolous, namely that the appeal "be 'so

**MEMORANDUM DECISION AND ORDER - 8**

baseless that it does not invoke appellate jurisdiction,' such as when 'the disposition is so plainly correct that nothing case be said on the other side.'" *Schering Corp.*, 2007 WL 1747115 at *3 (quoting *Apostol*, 870 F.2d at 1339). Therefore, Plaintiff's Motion to Retain Jurisdiction and Certify Defendants' Appeal as Frivolous (Docket No. 57) is denied, the practical effect of which automatically stays the instant action.[2]

### III.  ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiff's Motion to Retain Jurisdiction and Certify Defendants' Appeal as Frivolous (Docket No. 57) is DENIED; and

2. Defendants' Motion to Stay (Docket No. 55) is GRANTED.

Defendants' counsel shall contact Deputy Clerk Lynette Case at (208) 334-9023 to schedule a status conference within 10 days of the resolution of Defendants' appeal.

DATED: January 22, 2019

Ronald E. Bush
Chief U.S. Magistrate Judge

---

[2] To leave no doubt, however, and to ensure that the instant action is indeed stayed, the Court will contemporaneously grant Defendants' Motion to Stay (Docket No. 55).

**MEMORANDUM DECISION AND ORDER - 9**